UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DR. AMIR KAKI, M.D., ET AL,

        Plaintiffs,

            v.

TENET HEALTHCARE CORPORATION,
ET AL,

        Defendant.

_____/

Case No. 20-10004

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
DAVID R. GRAND

**ORDER GRANTING PLAINTIFFS' MOTION TO CONFIRM THE ARBITRATION AWARD [10] AND DENYING DEFENDANTS' MOTIONS TO SEAL [14] AND VACATE [27] THE ARBITRATION AWARD**

Following arbitration proceedings with the Judicial Arbitration and Mediation Services ("JAMS"), Plaintiffs, Drs. Amir Kaki and Mahir Elder, move to confirm an Arbitration Award ("the Award") entered in their favor pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9. (ECF No. 10). Defendants, Tenet Healthcare Corporation, VHS, Inc., VHS of Michigan, Inc., VHS Harper-Hutzel Hospital, Inc., VHS Sinai-Grace Hospital, Inc., VHS Detroit Receiving Hospital, Inc., and several affiliated individuals, oppose confirmation and move to seal and vacate the Award. (ECF No. 14; ECF No. 27).

1

## BACKGROUND

The Court adopts in full the extensive statement of facts set forth in the Award by the Arbitrator. (ECF No. 30, PageID.1325-65). To briefly summarize, Plaintiffs are prominent cardiologists who held Directorships and other privileges at Detroit Medical Center until Defendants refused to renew them in 2018 and 2019. Defendants claimed this was due to an investigation that revealed various conduct violations. Plaintiffs claimed that it was retaliation for complaints they made regarding patient safety and Medicare/Medicaid fraud.

Plaintiffs initially brought suit in March of 2019 alleging violations of the False Claims Act ("FCA"), 31 U.S.C. § 3730, and several state laws. *Kaki v. Tenet Healthcare Corp.*, No. 19-10863. On October 9, 2019, the Court, at Defendants' request, ordered the parties to arbitrate Plaintiffs' federal claim and dismissed Plaintiffs' state law claims without prejudice. *Kaki v. Tenet Healthcare Corp.*, 2019 U.S. Dist. LEXIS 174976, at *14 (E.D. Mich. Oct. 9, 2019). Plaintiffs thereafter brought their state law claims in the Wayne County Circuit Court. *Kaki v. Tenet Healthcare Corp.,* No. 2019-014985-CD. On December 11, 2019, Plaintiffs amended their Wayne County complaint to include new FCA claims for post-termination retaliation. Defendants removed the Wayne County case to this Court and again sought to compel arbitration. (ECF No. 1). On February 20, 2020, the Court entered a stipulated order dismissing Plaintiffs' remaining claims without

2

prejudice and compelling such claims to be consolidated into the already-existing arbitration. (ECF No. 9).

The arbitration hearing took place in September and October of 2020 and lasted eighteen days. (ECF No. 30). On December 18, 2020, the Arbitrator entered an award in favor of Plaintiffs on four of their seven claims: FCA retaliation, tortious interference with business expectancies, false light, and breach of contract. (*Id.*). The Arbitrator awarded compensatory damages totaling over ten million dollars, as well as equitable relief including, among other things, a one-year reinstatement of Plaintiffs' DMC privileges. (*Id.*).

**DISCUSSION**

## I.  The Award "Must" Be Confirmed

Defendants' arguments that the Award should be vacated can be broken down into two categories: 1) those involving the Arbitrator's alleged manifest disregard of the law, and 2) those involving the Arbitrator allegedly exceeding her authority. As explained in more detail below, the Court finds first, that only the latter of these categories could present a valid basis for vacatur under the FAA, and second, that because Defendants fail to demonstrate that the Arbitrator exceeded her authority, the Award "must" be confirmed. 9 U.S.C. §§ 9, 10(a).

### A.  Standard of Review

The FAA expresses a "federal policy favoring arbitration." *Bratt Enters., Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 613 (6th Cir. 2003)

3

> (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989)). "When courts are called on to review an arbitrator's decision, the review is very narrow; it is one of the narrowest standards of judicial review in all of American jurisprudence." *Uhl v. Komatsu Forklift Co.*, Ltd., 512 F.3d 294, 305 (6th Cir. 2008) (brackets and citation omitted). "Courts must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious legal or factual error." *Solvay Pharms., Inc. v. Duramed Pharms., Inc.*, 442 F.3d 471, 476 (6th Cir. 2006) (brackets, citation, and emphasis omitted).

*Samaan v. Gen. Dynamics Land Sys.*, 835 F.3d 593, 600 (6th Cir. 2016). "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of [their] authority, the fact that a court is convinced [they] committed serious error does not suffice to overturn [their] decision." *United Paperworkers Int'l Union, AFL CIO v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987). "Courts are bound by the arbitrator's findings of fact and do not function as appellate courts or courts of review . . . ." *Int'l Broth. of Elec. Workers, Local 429 v. Toshiba Am., Inc.*, 879 F.2d 208, 209 (6th Cir. 1989).

Pursuant to the FAA, a court may vacate an arbitration award under four circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

4

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The Supreme Court has held that these are the "exclusive grounds" for vacatur and that "a [reviewing] court *'must'* confirm an arbitration award 'unless' it is vacated, modified, or corrected *'as prescribed' in §§ 10* and 11." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582, 584 (2008) (emphasis added) (quoting 9 U.S.C. § 9).

"Prior to . . . *Hall Street*, the Sixth Circuit [had] held that, as an alternative to the grounds in 9 U.S.C. § 10, an arbitrator's award could be vacated on 'a separate judicially created basis . . . where [it] was made in manifest disregard of the law.'" *Samaan*, 835 F.3d at 600 (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995)). Immediately following the Supreme Court's decision, the Sixth Circuit, in an unpublished opinion, described *Hall Street* as "significantly reduc[ing] the ability of federal courts to vacate arbitration awards for reasons other than those specified in 9 U.S.C. § 10, but . . . not foreclos[ing] federal courts' review for an arbitrator's manifest disregard of the law." *Coffee Beanery, Ltd. v. WW, L.L.C.*, 300 F. App'x 415, 418 (6th Cir. 2008). A published decision stated the same in dicta later that week. *See Dealer Comput. Servs. v. Dub Herring Ford*, 547 F.3d 558, 561 n.2 (6th Cir. 2008).

Since *Coffee Beanery* and *Dealer Comput.*, however, the most that published decisions have said of manifest disregard is that its continuing applicability "is an open question." *Samaan*, 835 F.3d at 600 (citing *Grain v. Trinity Health, Mercy Health Servs. Inc.*, 551 F.3d 374, 380 (6th Cir. 2008); *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010)). Moreover, the legal landscape has shifted since those cases were decided in 2008. At the time of the Sixth Circuit's decisions, only one circuit had abandoned the manifest disregard standard. *See Ramos-Santiago v. United Parcel Service*, 524 F.3d 120, 124 n.3 (1st Cir. 2008). Today, a majority of circuits have either done away with it entirely or do not view it as a separate ground for vacatur. *See Affymax, Inc. v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, 660 F.3d 281, 284-85 (7th Cir. 2011) (manifest disregard does not survive *Hall Street*); *Frazier v. CitiFinancial Corp.*, LLC, 604 F.3d 1313, 1324 (11th Cir. 2010) (same); *Medicine Shoppe Intern., Inc. v. Turner Investments, Inc.*, 614 F.3d 485, 488-89 (8th Cir. 2010) (same); *Citigroup Global Markets, Inc. v. Bacon*, 562 F.3d 349, 355-58 (5th Cir. 2009) (same); *see also Comedy Club, Inc. v. Improv West Associates*, 553 F.3d 1277, 1290 (9th Cir. 2009) (manifest disregard survives *Hall Street* because it is another way of describing the standard set forth in 9 U.S.C. § 10); *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 95 (2d Cir. 2008) (same), *rev'd on other grounds*, 559 U.S. 662 (2010). Thus, while its continuing vitality is still technically an "open question," the Court

6

finds it noteworthy that the Sixth Circuit has for more than a decade refused to vacate for manifest disregard. *See, e.g.*, *Ozormoor v. T-Mobile USA, Inc.*, 459 F. App'x 502, 505 (6th Cir. 2012) (explaining that "[t]here is some doubt whether [manifest disregard] remains a cognizable [theory]" and upholding the arbitrator's decision); *see also Grain*, 551 F.3d at 380 ("*Hall* Street's reference to the 'exclusive' statutory grounds for obtaining relief casts some doubt on the continuing vitality of [the manifest disregard] theory."). *But cf. Marshall v. SSC Nashville Operating Co.*, 686 F. App'x 348, 353 (6th Cir. 2017) ("We have previously held that despite the Supreme Court's language in *Hall Street Associates*, the 'manifest disregard' doctrine remains a viable ground for attacking an arbitrator's decision where '(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle.' (quoting *Coffee Beanery*, 300 F. App'x at 418)).

On balance, the weight of authority in and out of the Sixth Circuit points to manifest disregard no longer being a viable option in the wake of *Hall Street*, despite the fact that our Court of Appeals has not had occasion to formally decide the issue. And in the absence of binding authority one way or another, this Court elects to answer the "open question" in the negative and only analyze the award under the grounds enumerated by the FAA. *Cf. Dealer Comput. Servs.*, 547 F.3d at 561 n.2 (the question of whether to vacate for manifest disregard is discretionary). Because

Defendants raise no arguments under 9 U.S.C. § 10(a)-(c), the Court only reviews the Arbitrator's decision for whether it exceeded her powers under § 10(a).

"[A]n arbitrator derives [their] powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution." *Stolt-Nielsen S. A.*, 559 U.S. at 682.

> Courts may vacate arbitration awards "where the arbitrators exceed[] their powers," 9 U.S.C. § 10(a)(4), the idea being that periodic judicial intervention promotes arbitration in the long run. More parties will contract for arbitration if they can tailor arbitration to their particular needs; and fewer will opt for arbitration if they cannot. . . . "The burden of proving that the arbitrators exceeded their authority is very great," [*Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003)], and "courts must accord an arbitrator's decision substantial deference because it is the arbitrator's construction of the agreement, not the court's construction, to which the parties have agreed." *Beacon Journal Publ. Co. v. Akron Newspaper Guild, Local No. 7*, 114 F.3d 596, 599 (6th Cir. 1997).

*Solvay Pharm., Inc. v. Duramed Pharm., Inc.*, 442 F.3d 471, 475-76 (6th Cir. 2006).

The analysis for whether an arbitrator exceeded their powers under 9 U.S.C. § 10(a)(4) looks to the nature of the agreement between the parties. *See McGee v. Armstrong*, 941 F.3d 859, 867 (6th Cir. 2019).[1] The Arbitrator's decision must be upheld as long as they are "arguably . . . acting within the scope of [their] authority."

---

[1] The Court notes that while some of the Sixth Circuit's unpublished decisions have applied the manifest disregard standard when analyzing whether an arbitrator has exceeded their powers, *see, e.g.*, *Barrick Enters. v. Crescent Petroleum, Inc.*, 496 F. App'x 614, 619 (6th Cir. 2012), its published decisions have treated the two as entirely separate inquiries. *See, e.g.*, *Samaan*, 835 F.3d at 600; *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 845 (6th Cir. 2003); *Merrill Lynch*, 70 F.3d at 421.

*E. Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000) (quoting *United Paperworkers*, 484 U.S. at 38). An arbitrator acts within the scope of their authority so long as the award they craft "'draws its essence from the . . . agreement,' and is not merely the arbitrator's 'own brand of . . . justice.'" *Beacon Journal*, 114 F.3d at 599 (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). *See, e.g.*, *Stolt-Nielsen S. A.*, 559 U.S. at 673-74, 676 (arbitration panel exceeded powers by "proceed[ing] as if it had the authority of a common-law court to develop what it viewed as the best rule to be applied" rather than "identifying and applying a rule of decision derived from [applicable law]").

### B. Analysis

Defendants bring three main challenges to the Award. First, Defendants argue that the Arbitrator's analysis finding Defendants not immune from money damages under the Health Care Quality Improvement Act ("HCQIA"), 42 U.S.C. §§ 11101-52, was made in manifest disregard of the law. (ECF No. 29, PageID.1294). Second, Defendants argue that the Arbitrator manifestly disregarded the law by finding that certain Defendants acted with malice and were thus, not protected by the releases from liability signed by Plaintiffs. (*Id.* at 1304). Third, Defendants argue that the Arbitrator exceeded her authority and/or acted in manifest disregard of the law by awarding reinstatement in addition to front pay under the FCA. (*Id.* at 1307, 1309). Defendants do not argue, and the Court does not find, that "the award was procured

by corruption, fraud, or undue means," 9 U.S.C. § 10(a)(1), that "there was evident partiality or corruption in the arbitrators," *id.* § 10(a)(2), or that "the arbitrators were guilty of misconduct," *id.* § 10(a)(3).

As described in detail above, "the FAA does not provide for judicial review of an arbitrator's legal conclusions." *PolyOne Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692, 697 (6th Cir. 2019); *see Samaan*, 835 F.3d at 605 ("[A] legal error committed by an arbitrator is insufficient for vacatur under the FAA."). Nor does it allow courts to question an arbitrator's findings of fact. *See NetJets Aviation, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 486 F.3d 935, 937 (6th Cir. 2007) ("[R]eviewing courts are bound by the facts as found by the arbitrator . . . ."). Accordingly, the Arbitrator's legal and factual conclusions regarding HCQIA immunity, the parties' releases of liability, and the scope of relief under the FCA are not appropriate for this Court's review.

The only legitimate potential ground for vacatur presented by Defendants is whether the Arbitrator "exceeded [her] powers" under 9 U.S.C. § 10(d). Defendants raise this challenge with respect to the fact that the Arbitrator awarded both front pay and reinstatement. However, given that Defendants merely recite, pro forma, the language of § 10(d), while really arguing that the Arbitrator made a legal error under the manifest disregard standard, it is unclear whether this argument is even appropriate for the Court's consideration. (ECF No. 29, PageID.1309). Nevertheless,

10

to the extent that Defendants properly present this theory of vacatur, the Court finds their arguments without merit.

The text of the arbitration clauses in Plaintiffs' Directorship Agreements are identical. They provide, in pertinent part, that "[a]ny dispute or controversy arising under, out of or in connection with, or in relation to this Agreement . . . shall be determined and settled by final and binding arbitration . . . in accordance with the Commercial Rules of Arbitration ('Rules') of [JAMS] before one arbitrator applying the laws of the State." (ECF No. 10-3, PageID.555; ECF No. 10-4, PageID.563). JAMS Rule 24(c), in turn, provides that "the Arbitrator shall be guided by the rules of law agreed upon by the Parties" and that "[t]he Arbitrator may grant any remedy or relief that is just and equitable and within the scope of the Parties' agreement, including, but not limited to, specific performance of a contract or any other equitable or legal remedy." (ECF No. 21-1, PageID.819). The issue, then, is whether by providing the equitable remedy of reinstatement in addition to front pay, the award failed to "draw[] its essence from the . . . agreement" or imposed "the [A]rbitrator's 'own brand of . . . justice.'" *Beacon Journal*, 114 F.3d at 599 (quoting *United Steelworkers*, 363 U.S. at 597). The text of the agreements makes clear it did not.

The Arbitrator awarded an equitable remedy, one which the parties', by incorporating the JAMS Rules, acknowledged was within the Arbitrator's power.

Apart from its adoption of the JAMS Rules, the parties' agreement is silent as to specific remedies or limitations on the Arbitrator's power. Because of this silence, the Court must "give deference to the [A]rbitrator['s] interpretation of the Rule and the [a]greement unless [she has] clearly exceeded their authority." *Island Creek Coal Sales Co. v. Gainesville*, 729 F.2d 1046, 1049 (6th Cir. 1984) (upholding interim injunctive relief where agreement incorporated arbitration rules by reference and did not impose limits on injunctive relief), *abrogated on other grounds by Cortez Byrd Chips v. Bill Harbert Constr. Co.*, 529 U.S. 193 (2000). The equitable remedy awarded by the Arbitrator was one mandated by the FCA. *See* 31 U.S.C. § 3730(h)(2) (stating that "[r]elief . . . *shall* include reinstatement" (emphasis added)); *see also El-Khalil v. Tedeschi*, No. 18-cv-12759, 2020 U.S. Dist. LEXIS 77756, at *11-12 (E.D. Mich. May 4, 2020) (noting that petitioner's "[s]uccess on [his] FCA retaliation claims against DMC could . . . result in the reinstatement of [his] privileges"); CLAIRE M. SYLVIA, THE FALSE CLAIMS ACT: FRAUD AGAINST THE GOVERNMENT § 5:5 (2019) ("The [2010] amendments [to the FCA] sought to address court decisions that had concluded that the Act did not protect persons who were not technically employees, such as independent contractors *or doctors without traditional employment relationships with hospitals*." (emphasis added)). Accordingly, the Court cannot conclude that she exceeded her authority.

Finally, the Court notes that even assuming for the sake of argument that a manifest disregard standard applied to its review of the Arbitrator's legal conclusions, Defendants have failed to show that the Award "fl[ies] in the face of clearly established legal precedent." *Merrill Lynch*, 70 F.3d at 421 ("[E]ven a misapplication of well[-]defined and explicit legal principles does not constitute manifest disregard."); *see Schafer v. Multiband Corp.*, 551 F. App'x 814, 819 (6th Cir. 2014) (finding no manifest disregard even where "arbitrator's analysis appear[ed] to be legally unsupportable under [the Sixth Circuit's] precedents, such that [the Court of Appeals] would reverse the decision if it had been made by a district court"). The Arbitrator concluded that while Plaintiffs' privileges could be reinstated, their Directorship Agreements could not be. The award of front pay mitigated the disparity created by this partial reinstatement and was neither duplicative nor manifestly contrary to law.

## II.    <u>Defendants Have Failed to Show that the Award Must Be Sealed</u>

Although "arbitration hearings normally proceed outside of the public sphere," courts, including those in the Sixth Circuit, typically find that "this veil of secrecy is lifted once the parties turn to federal court to confirm, vacate, or modify an arbitration award." *Visteon Corp. v. Leuliette*, No. 16-11180, 2018 U.S. Dist. LEXIS 14513, at *15 (E.D. Mich. Jan. 30, 2018); *see, e.g.*, *Nationwide Mut. Ins. Co. v. Randall & Quilter Reinsurance Co.*, No. 2:07-cv-0120, 2007 U.S. Dist. LEXIS

58746, at *5-6 (S.D. Ohio Aug. 10, 2007). Indeed, the FAA required that Plaintiffs file their Award when moving to confirm. *See* 9 U.S.C. § 13 (b); *see also* Christopher R. Drahozal, *Confidentiality in Consumer and Employment Arbitration*, 7 Y.B. ON ARB. & MEDIATION 28, 32-33 (2015) ("Under the FAA, most courts have refused to allow filing of the award under seal, even when the parties have entered into a separate confidentiality agreement covering the arbitration.").

"The public has a strong interest in obtaining the information contained in the court record." *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983). "[S]ecrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption." *Id.* at 1179. Accordingly, "[o]nly the most compelling reasons can justify non-disclosure of judicial records." *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 476 (6th Cir. 1983). "[T]he proponents of closure bear the burden of showing that 'disclosure will work a clearly defined and serious injury[.]' And '[i]n delineating the injury to be prevented, specificity is essential.'" *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 307-08 (6th Cir. 2016) (alteration in original) (citations omitted) (quoting *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001)). Thus, "even where a party can show a compelling reason why certain documents or portions thereof should be sealed, the seal itself must be narrowly tailored to serve that reason." *Id.* at 305.

14

Rather than directing the Court to specific portions of the Award they believe should be filed under seal, Defendants argue the entire award must be sealed. (ECF No. 14, Page.ID 635). None of Defendants' arguments, however, overcome the "'strong presumption in favor of openness' as to court records." *Shane Grp.*, 825 F.3d at 305 (quoting *Brown & Williamson*, 710 F.2d at 1179). First, the fact that the parties may have previously agreed to keep certain materials confidential, either through signed releases or via stipulated protective order, is insufficient to justify sealing. *See Brown & Williamson*, 710 F.2d at 1180 ("The confidentiality agreement between the parties does not bind the court in any way."). Second, while the Arbitrator and JAMS Rules designated the arbitration proceeding as confidential, the Arbitrator never ordered that the Award be filed under seal and the JAMS Rules only apply to JAMS and the Arbitrator. (ECF No. 23-3, PageID.896). Third, while the Sixth Circuit has recognized that "protecting the 'privacy rights' of third parties *may* justify filing certain information under seal," *Amerisure*, 2014 U.S. Dist. LEXIS 153013, at *4 (emphasis added) (quoting *Brown & Williamson*, 710 F.2d at 1179), Defendants have not demonstrated that "disclosure [of the Award] will work a clearly defined and serious injury" on any of the third parties referenced therein. *In re Cendant Corp.*, 260 F.3d at 194. Finally, MICH. COMP. LAWS § 333.21515 does not mandate sealing because the Arbitrator found that Plaintiffs were never subject to peer review and because federal privilege law, which does not recognize a peer

15

review privilege, applies to this action. *See Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992); *Hubble v. Cty. of Macomb*, No. 16-13504, 2017 U.S. Dist. LEXIS 233007, at *6 (E.D. Mich. Aug. 23, 2017). Accordingly, the Award will be unsealed.

## CONCLUSION

"Like many who have brought their case before an arbitrator and lost, [Defendants] seek[] a second opportunity to litigate [their] claim[s] before the courts." *Marshall*, 686 F. App'x at 355. Indeed, Defendants here not only attempt to relitigate the legal issues, but also endeavor to introduce a factual counternarrative unmoored from the findings of the Arbitrator and including evidence which the Arbitrator specifically found inadmissible. By seeking a wholesale retrial of their case after forcing Plaintiffs to arbitrate in the first place, Defendants ignore the FAA's goal of relieving judicial congestion and providing parties a faster and cheaper alternative to litigation. *See Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). And because Defendants have failed to demonstrate that the Award warrants vacatur under the FAA's enumerated grounds (or the antiquated manifest disregard standard), the Award "must" be confirmed. 9 U.S.C. § 9. Additionally, because Defendants have not overcome the "strong presumption in favor of openness" with respect to the Award, it will be unsealed. *Brown & Williamson*, 710 F.2d at 1179.

Finally, the Court notes Defendants' request to "establish a future date whereon 'reinstatement' of one year of new privileges would be effective." (ECF No. 38, PageID.1957). Although the Court understands that "DMC's Governing Body must take various actions to comply with federal and state law" before Plaintiffs' privileges can become effective, the Court is puzzled by Defendants' argument that this "cannot be completed in mere days or hours." (*Id.*). It has been over a month since the Arbitrator issued her decision, which should have been plenty of time to make these arrangements. In any case, Defendants must now move *immediately* to restore Plaintiffs' privileges. If Defendants do not comply with the terms of the Award by fully restoring Plaintiffs' privileges on February 1, 2021, the one-year membership term specified in the Award will go into effect on the date that Plaintiffs' privileges are fully restored and will last one year from that date. If Defendants continue to delay the restoration of Plaintiffs' privileges in the hopes of a different result on appeal, they will be in violation of this Order.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion to Confirm the Arbitration Award [10] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Motions to Vacate the Arbitration Award [27] and Seal the Arbitration Award [14] are **DENIED**.

17

**IT IS FURTHER ORDERED** that Plaintiffs' Motions to Show Cause [11] and for Expedited Consideration [21] are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendants immediately begin the process of restoring Plaintiffs' privileges and that if Plaintiff's privileges are not fully restored by February 1, 2021, Plaintiffs' one-year membership term will go into effect on the date that their privileges are fully restored and will last one year from that date.

**SO ORDERED**.


                                        s/Arthur J. Tarnow
                                        Arthur J. Tarnow
Dated: February 1, 2021                 Senior United States District Judge